**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
EASTERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

NOV 09 2016

ARTHUR JOHNSTON
BY_____ DEPUTY

| | |
|---|---|
| JONATHAN RAUL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| GREGORY H. MITCHELL, TED E. PARKER, J. DOUGLAS SEIDENBURG, CHARLES R. LIGHTSEY, ANDREW D. STETELMAN, DAVID W. BOMBOY, E. RICKY GIBSON, FRED A. MCMURRY, RAY COLD, JR., THE FIRST BANCSHARES, INC., A. WILBERT'S SONS LUMBER AND SHINGLE CO., | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 2:16cv194-KS-MTP

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff Jonathan Raul ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public shareholders of The First Bancshares, Inc. ("First Bancshares" or the "Company") against First Bancshares and the members of its Board of Directors (the "Board") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9 and Regulation G.

2.     This action is brought in connection with several recent transactions the Company has engaged in, including a private placement of preferred stock (the "Private Placement") – in

1

which Company insiders were provided preferential treatment and received a significant discount to purchase shares of First Bancshares – and related acquisitions of Iberville Bank ("Iberville") and Gulf Coast Community Bank ("Gulf Coast"), by First Bancshares.

3.     On October 12, 2016, in order to fund the proposed acquisition of Iberville, the Company entered into Securities Purchase Agreements ("SPAs") with a limited number of institutional and other accredited investors, including certain directors of the Company, to sell a total of 3,563,380 shares of Series E Preferred Stock, at a price of $17.75 per share, for aggregate gross proceeds of $63.25 million.   Defendants Bomboy, Cole, Gibson, Lightsey, McMurry, Parker, Seidenburg and Stetelman entered into the SPAs.

4.     The $17.75 per share price of the SPAs provides Company insiders a discount to the Company's share price and favors Defendants.  In fact, the Company's stock closed as high as $19.32 per share as recently as September 29, 2016 and has traded over $21 per share every day since the SPAs were entered into.

5.     Defendants now ask the Company's shareholders to vote in favor of approving the issuance of common stock, so that in accordance with the SPAs, the Series E Preferred Shares will mandatorily convert into the same number of shares of common stock.  If the Company's shareholders do not approve the issuance of common stock, then the Company "will be required to pay dividends on the Series E Preferred Stock, on a non-cumulative basis, *at an annual rate of 6%* of the liquidation value of the Series E Preferred Stock, which is $17.75."  Shareholders have no choice but to approve the issuance of the discounted common stock to defendants in order for the Company to not have to continuously pay out dividends on the Series E Preferred Shares.

6.     In 2015, the Company's common stockholders' dividend was $800,000.  If the

Company has to pay the 6% dividend on the Series E Preferred Shares (approximately $60 million after underwriter fees), then the common stockholders dividend would be materially reduced, if not be completely foreclosed from any future potential dividend. Further, shares of the Series E Preferred Stock are entitled to the special 6% dividend in addition to any dividend received by the common stockholders. As a result, the Company's common stockholders have no choice but to approve the issuance of common shares for the Series E Preferred Stock in order to avoid the onerous dividend payable to the shares of Series E Preferred Stock.

7.      Shares of the Series E Preferred Stock also have special voting rights. Pursuant to Section 9 of the Certificate of Designation, Preferences and Rights of Series Nonvoting Convertible Preferred Stock, shares of the Series Preferred Stock as their own class have to approve certain corporate actions that affect common stockholders, including: (i) amending, altering or repealing any provision of the Articles of Incorporation or By-Laws (including any provision that adversely affects the rights of the Series E Preferred Stock); and (ii) entering into any Reorganization Event (i.e., merger, consolidation or similar business transaction).

8.      On October 14, 2016, First Bancshares, the holding company for The First, A National Banking Association, ("The First"), announced the signing of a Stock Purchase Agreement (the "Stock Purchase Agreement") with A. Wilbert's Sons Lumber and Shingle Company ("A. Wilbert's Sons"), parent company of Iberville Bank. Pursuant to the Stock Purchase Agreement, First Bancshares agreed to acquire 100% of the common stock of Iberville Bank in an all-cash transaction valued at approximately $31.1 million (the "Iberville Transaction").

9.      The Company also announced on October 14, 2016 the signing of an Agreement and Plan of Merger (the "Merger Agreement") under which it has agreed to acquire Gulf Coast,

in an all-stock transaction.  Gulf Coast shareholders are to receive shares of First Bancshares, valued at approximately $0.50 (the "Gulf Coast Transaction").

10.     In connection with the Private Placement, Iberville Transaction and Gulf Coast Transaction, the Company engaged numerous financial advisors.

11.     On October 14, 2016, in order to convince First Bancshares' stockholders to vote in favor of approving the issuance of the preferred stock for the SPAs, the Board authorized the filing of a materially incomplete and misleading proxy statement on Form PRE 14A (the "Proxy") with the U.S. Securities and Exchange Commission ("SEC"), in violation of Section 14(a) and 20(a) of the Exchange Act.  In particular, the Proxy contains materially incomplete and misleading information and/or fails to disclose material information concerning:

    a.  The amount by which the Company's common stock will be diluted on a per share basis if the proposal to issue 3,563,380 shares of common stock is approved;

    b.  Whether the Company and/or First Bancshares' management explored alternative transactions to raise capital as opposed to the Private Placement and, if so, the costs of such alternative transactions;

    c.  If the Company did explore alternative financing opportunities, whether such opportunities were debt or equity transactions, or a combination of both;

    d.  How the Company plans to use the remaining proceeds from the Private Placement after the Iberville Transaction;

    e.  What the Company's internal rate of return ("IRR") is;

    f.  The identities of the institutional and accredited investors to the SPAs;

    g.  Whether any of the parties to the SPAs have any affiliations or are related parties with each other, the Company or any defendant;

    h.  The Company's financial projections;

    i.  Information relating to the financial analyses performed by (i) Keefe, Bruyette & Woods, Inc. and (ii) Sheshunoff & Co., in connection with the SPA and the Iberville Transaction;

4

j.  Information relating to the financial analyses performed by (i) Performance Trust Capital Partners and (ii) Monroe Financial Partners, Inc., in connection with the Gulf Coast Community Bank Transaction; and

k.  Information relating to the financial analyses performed by FIG Partners, LLC, (ii) Stephens Inc., and (iii) Keefe, Bruyette & Woods, Inc., in connection with the Private Placement of preferred stock.

12.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against First Bancshares and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act, and SEC Regulation G and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to further consummate the Private Placement, Iberville Transaction and/or Gulf Coast Transaction, unless and until the material information discussed herein is disclosed to First Bancshares stockholders before the vote on the Private Placement, Iberville Transaction and/or Gulf Coast Transaction, or, in the event any or all of those transactions are consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

13.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and SEC Regulation G and Section 20(a) of the Exchange Act.

14.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

15.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) First Bancshares maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

16.     Plaintiff is, and at all relevant times has been, a continuous stockholder of First Bancshares.

17.     Defendant First Bancshares is a corporation organized and existing under the laws of the State of Mississippi with its principle executive offices located at 6480 U.S. Highway 98 West, Suite A, Hattiesburg, Mississippi 39402.  First Bancshares is the holding company for The First, A National Banking Association.

18.     Defendant Gregory H. Mitchell ("Mitchell") has been a director of the Company since 2003.

19.     Defendant Ted E. Parker ("Parker") has been a director of the Company since 1995.  In the Private Placement, Defendant Parker purchased 9,859 shares of Series E Preferred Stock.

20.     Defendant J. Douglas Seidenburg ("Seidenburg") has been a director of the Company since 1998.  In the Private Placement, Defendant Seidenburg purchased 11,584 shares and 2,500[1] shares of Series E Preferred Stock.

---

[1] Shares held of record by M.D. Outdoor, LLC., in which Defendant Seidenburg is a 50% owner.

21.    Defendant Charles R. Lightsey ("Lightsey") has been a director of the Company since 2003. In the Private Placement, Defendant Lightsey purchased 28,169 shares of Series E Preferred Stock.

22.    Defendant Andrew D. Stetelman ("Stetelman") has been a director of the Company since 1995. In the Private Placement, Defendant Stetelman purchased 5,634 shares of Series E Preferred Stock.

23.    Defendant David W. Bomboy ("Bomboy") has been a director of the Company since 1995. In the Private Placement, Defendant Bomboy purchased 14,085 shares of Series E Preferred Stock.

24.    Defendant E. Ricky Gibson ("Gibson") has been a director of the Company since 1995. In the Private Placement, Defendant Gibson purchased 3,775 shares of Series E Preferred Stock.

25.    Defendant Fred A. McMurry ("McMurry") has been a director of the Company since 1995. In the Private Placement, Defendant McMurry purchased 5,634 shares[2] of Series E Preferred Stock.

26.    Defendant Ray Cole, Jr. ("Cole") is the Chief Executive Officer ("CEO") and President of the Company, and has been a director of First Bancshares since 2001. In the Private Placement, Defendant Cole purchased 2,000 Shares of Series E Preferred Stock.

27.    Defendants Mitchell, Parker, Seidenburg, Lightsey, Stetelman, Bomboy, Gibson, McMurry and Cole comprise the Board of First Bancshares and are collectively referred to herein as the "Director Defendants" or "Individual Defendants."

## CLASS REPRESENTATION ALLEGATIONS

---

[2] Shares held of record by Oak Grove Land Company, Inc., in which Defendant McMurry is 33% owner.

28.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of First Bancshares (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

29.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As of October 21, 2016, there were approximately 5,428,017 shares of First Bancshares common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country. The actual number of public stockholders of First Bancshares will be ascertained through discovery.

b.    There are questions of law and fact that are common to the Class, including the following:

> i.   whether Defendants have misrepresented or omitted material information concerning the Private Placement, Iberville Transaction and/or Gulf Coast Transaction in the Proxy in violation of Section 14(a) of the Exchange Act and SEC Rules and Regulations including Rule 14a-9 and Regulation G;

> ii.  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

> iii. whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Private Placement, Iberville Transaction and/or Gulf Coast Transaction based on the materially incomplete and misleading Proxy.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of First Bancshares

30.     The First Bancshares, Inc. operates as the bank holding company for The First, A National Banking Association that provides commercial and retail banking services to small to medium-sized businesses, professional concerns, and individuals.   The Company operates through 27 branches, 1 motor bank facility, and 4 loan production offices in the states of Mississippi, Alabama, and Louisiana.

### The Private Placement

31.     On October 12, 2016, the Company entered into SPAs with a limited number of institutional and other accredited investors, pursuant to which the Company sold in the Private Placement of 3,563,380 shares of newly authorized Series E Preferred Stock, at a purchase price

of $17.75 per share, for aggregate gross proceeds of $63,249,995.

32.     The terms of the Series E Preferred Stock provide for their mandatory conversion into an equivalent number of shares of the Company's common stock upon approval by the Company's shareholders.  The Company paid $3,162,499.75 in fees to its financial advisors who acted as placement agents in the private placement.  The Private Placement transaction was completed on October 14, 2016, as announced in the October 14, 2016 Form 8-K:

### *Private Placement of Preferred Stock*

First Bancshares also announced today the signing of SPAs for a private placement of Preferred Stock, Series E, $1.00 par value. The Company expects to raise gross proceeds of $63.25 million in new capital through the private placement of 3,563,380 shares of its Series E Preferred Stock at a price of $17.75 per share.

The preferred stock will automatically convert into shares of First Bancshares' Common Stock at a ratio of one share of Common Stock for each share of Preferred Stock owned within three business days following the Company's receipt of shareholder approval. It is currently anticipated that the shareholders' meeting at which this approval is to be solicited will be scheduled for December 7, 2016.

The Company intends to use the net proceeds from this offering to finance a portion of the Iberville Bank Acquisition and related expenses, to support its capital ratios in connection with Iberville Bank and GCCB acquisitions and for general corporate purposes. If the Iberville Bank or GCCB acquisitions are not completed, the shares of Series E Preferred Stock will remain outstanding and proceeds will be used for general corporate purposes to support growth strategy, which may include organic growth, funding acquisition opportunities, *de novo* branching into new markets, redemption of our CDCI securities or other organic expansion of our business.

33.     The Proxy references the Private Placement and the upcoming vote which is a foregone conclusion.  Specifically, the Proxy states the following:

### Consequences of Approval of Proposal 1

Shareholder approval of Proposal 1 will result in the following consequences:

*Conversion of Series E Preferred Stock into Common Stock at the Initial Conversion Price.* Each share of Series E Preferred Stock will be automatically converted into one share of common stock on the third business day following receipt of shareholder approval of Proposal 1.

*Elimination of Dividend and Liquidation Preference of Holders of Series E Preferred Stock.* If shareholder approval is obtained, all shares of Series E Preferred Stock will be cancelled. As a result, approval of the conversion of Series E Preferred Stock will result in the elimination of the dividend rights and liquidation preference existing in favor of the Series E Preferred Stock. For more information regarding such dividend rights and liquidation preference, see "Series E Preferred Stock Terms and Provisions" in this proxy statement.

*Elimination of Separate Voting Rights of Holders of Series E Preferred Stock.* If shareholder approval is obtained, all shares of Series E Preferred Stock will be cancelled. Holders of Series E Preferred Stock have approval rights for certain Company actions, and conversion of Series E Preferred Stock would result in the elimination of these separate voting rights. For more information regarding such voting, see "Series E Preferred Stock Terms and Provisions" in this proxy statement.

*Market Effects.* Despite the existence of certain restrictions on transfer relating to securities law, the issuance of shares of our common stock upon conversion of the Series E Preferred Stock may impact trading patterns and adversely affect the market price of our common stock. If significant quantities of our common stock issued upon conversion of the Series E Preferred Stock are sold (or if it is perceived that they may be sold) after their registration into the public market, the trading price of our common stock could be materially adversely affected.

*Dilution.* We will issue, through the conversion of the Series E Preferred Stock, approximately 3,563,380 shares of common stock (in addition to the 5,428,017 shares of common stock currently outstanding). As a result, we expect there to be a dilutive effect on both the earnings per share of our common stock and the book value per share of our common stock. In addition, our existing shareholders will incur substantial dilution to their voting interests and will own a smaller percentage of our outstanding common stock.

**Consequences of Failure to Approve Proposal 1**

*Series E Preferred Stock Will Remain Outstanding.* Unless the shareholder approval is received or unless our shareholders approve a similar proposal at a subsequent meeting, the Series E Preferred Stock will remain outstanding in accordance with its terms.

*Continued Dividend Payment and Potential Market Effects.* If shareholder approval is not obtained, we expect that the shares of Series E Preferred Stock

will remain outstanding for the foreseeable future and, beginning six (6) months from the issuance of the Series E Preferred Stock, or approximately April 12, 2017, and for so long as such shares remain outstanding, we will be required to pay dividends on the Series E Preferred Stock, on a non-cumulative basis, at an annual rate of 6% of the liquidation value of the Series E Preferred Stock, which is $17.75.

*Continued Separate Voting Rights of Holders of Series E Preferred Stock.* If shareholder approval is not received, shares of Series E Preferred Stock will remain outstanding. Holders of Series E Preferred Stock have certain separate voting rights, the holders of our common stock will be unable to take certain actions without approval by the holders of the Series E Preferred Stock. For more information regarding such voting, see "Series E Preferred Stock Terms and Provisions" in this proxy statement.

*Additional Shareholder Meetings.* We will be required to call additional shareholder meetings and recommend approval of Proposal 1 at each meeting to the shareholders every three months, if necessary, until such approval is obtained pursuant to the provisions of the Securities Purchase Agreements. We will bear the costs of soliciting the approval of our shareholders in connection with these meetings.

*Restriction on Payment of Dividends.* If shareholder approval is not obtained, the shares of Series E Preferred Stock will remain outstanding and, beginning six (6) months from the issuance of the Series E Preferred Stock, or approximately April 12, 2017, and for so long as such shares remain outstanding, if dividends payable on all outstanding shares of the Series E Preferred Stock have not been declared and paid, or declared and funds set aside therefor, we will not be permitted to declare or pay dividends with respect to, or redeem, purchase, or acquire any of our junior securities, or redeem, purchase or acquire any parity securities, subject to limited exceptions.

*Participation in Dividends on Common Stock.* So long as any shares of Series E Preferred Stock are outstanding, if we declare any dividends on our common stock or make any other distribution to our common shareholders, the holders of the Series E Preferred Stock will be entitled to participate in such distribution on an as-converted basis.

*Liquidation Preference.* For as long as the Series E Preferred Stock remains outstanding, it will retain a senior liquidation preference over shares of our common stock in connection with any liquidation of us and, accordingly, no payments will be made to holders of our common stock upon any liquidation of us unless the full liquidation preference on the Series E Preferred Stock is paid.

34.     Essentially, defendants have failed to adequately inform shareholders the reasons the Company entered into the inequitable transaction in connection with the issuance of the Series E Preferred Stock.  Defendants are requiring the Company's shareholders to approve the proposal to issue common stock for each share of Series E Preferred Stock purchased in the Private Placement without adequate disclosures.  If the Company's common shareholders do not approve the proposal to issue common stock for the Series E Preferred Stock, then, according to the SPAs, the Company "will be required to pay dividends on the Series E Preferred Stock, on a non-cumulative basis, *at an annual rate of 6%* of the liquidation value of the Series E Preferred Stock, which is $17.75."  If the Company has to pay the 6% dividend on the Series E Preferred Stock, then any dividend the common stockholders would receive would be materially reduced, if not completely foreclosed.  Thus, shareholders have to choose between approving the discounted purchase price for the Company's common stock to the Company's insiders or allow the Company to continue to expend money on the 6% dividend rate for the Series E Preferred Stock.

35.     Furthermore, Shares of the Series E Preferred Stock also have special voting rights, including: (i) amending, altering or repealing any provision of the Articles of Incorporation or By-Laws (including any provision that adversely affects the rights of the Series E Preferred Stock); and (ii) entering into any Reorganization Event (i.e., merger, consolidation or similar business transaction).

36.     The Company engaged the investment banking firm of FIG Partners, LLC to act as its Senior Placement Agent, Stephens Inc. to act as its Junior Placement Agent, and Keefe Bruyette & Woods, Inc. as its Co-Placement Agent, all to assist with the offering.

37.     The law firm of Jones Walker LLP acted as legal counsel to First Bancshares and King, Holmes, Paterno & Soriano, LLP served as counsel to the Placement Agents.

### The Transactions Provide a Sweetheart Deal for Company Insiders

38.     On October 14, 2016, the Company filed a Form 8-K with the SEC containing a press release announcing the Private Placement, Iberville Transaction and Gulf Coast Transaction.  The Form 8-K stated, in pertinent part:

**The First Bancshares, Inc. Announces the Acquisition of Iberville Bank and Gulf Coast Community Bank, and a Private Placement of Preferred Stock**

HATTIESBURG, Miss.--(BUSINESS WIRE)--October 14, 2016--The First Bancshares, Inc. (NASDAQ: FBMS) ("First Bancshares" or "the Company"), holding company for The First, A National Banking Association, ("The First") announced today the signing of a Stock Purchase Agreement with A. Wilbert's Sons Lumber and Shingle Company ("A. Wilbert's Sons"), parent company of Iberville Bank, Plaquemine, Louisiana, under which First Bancshares has agreed to acquire 100% of the common stock of Iberville Bank in an all-cash transaction. The Company also announced today the signing of an Agreement and Plan of Merger under which it has agreed to acquire Gulf Coast Community Bank ("GCCB"), Pensacola, Florida, in an all-stock transaction. In addition, the Company entered into Securities Purchase Agreements ("SPAs") with a limited number of institutional and other accredited investors, including certain directors of the Company (collectively the "Purchasers") to sell a total of 3,563,380 shares of mandatorily convertible non-cumulative, non-voting, perpetual Preferred Stock, Series E, $1.00 par value (the "Series E Preferred Stock") at a price of $17.75 per share, for aggregate gross proceeds of $63.25 million.

***Iberville Bank Transaction***

Under the terms of the Stock Purchase Agreement, First Bancshares will pay A. Wilbert's Sons a total of $31.1 million in cash. Approximately 8% of the purchase price payable to A. Wilbert's Sons is being held in escrow as contingency for flood-related loan losses in the event losses occur due to recent flooding in Iberville Bank's market area.

At June 30, 2016, Iberville Bank had approximately $258.5 million in assets, $140.8 million in net loans, $230.6 million in deposits and $26.2 million in stockholder's equity. Iberville Bank serves the Baton Rouge, LA area through 10 locations operating in Addis, Baton Rouge, Denham Springs, Pierre Part, Plaquemine, Plattenville, Port Allen, Prairieville, Saint Gabriel and White Castle, Louisiana....

The Stock Purchase Agreement has been approved by the Board of Directors of First Bancshares and A. Wilbert's Sons. Closing of the transaction, which is expected to occur late in the fourth quarter of 2016 or early in the first quarter of 2017, is subject to customary conditions, including regulatory approval and approval by the shareholders of A. Wilbert's Sons.

First Bancshares currently estimates annual pre-tax expense reductions associated with the transaction will be approximately 40% of Iberville Bank's annual non-interest expenses. Assuming the transaction is completed in the first quarter of 2017, the expense savings are estimated to be fully achieved by the end of 2017. The transaction is expected to be accretive in 2018, the first full year of combined operations. Estimated acquisition and conversion related costs are approximately $6.6 million on a pre-tax basis.

The transaction is expected to have an earnback period of approximately 4 years from the completion of the transaction. The internal rate of return for the transaction is projected to be greater than 25% which is well above First Bancshares' estimated cost of capital.

39.    Keefe, Bruyette & Woods, Inc., with Christopher T. Mihok as lead investment banker, acted as financial advisor to First Bancshares, and Jones Walker LLP, with lead attorney Neal Wise, acted as its legal advisor.

40.    Sheshunoff & Co., with Curtis Carpenter as lead investment banker, acted as financial advisor to A. Wilbert's Sons Lumber and Shingle Company, and Goodwin Procter, LLP, with lead attorney Andrew Goodman, acted as its legal advisor.

41.    The October 14, 2016 Form 8-K also announced the Gulf Coast Transaction:

### *Gulf Coast Community Bank Transaction*

Under the terms of the Agreement and Plan of Merger, GCCB will merge with and into The First. First Bancshares will issue GCCB's shareholders shares of the First Bancshares' common stock which, for purposes of the acquisition, will be valued through a 30-day average of First Bancshares' Common Stock price as of five (5) business days prior to closing. The merger consideration is valued at $0.50 per share of GCCB common stock for a total of approximately $2.3 million.

As of June 30, 2016, GCCB had $133.4 million in total assets, $82.8 million in net loans, $115.7 million in deposits and $5.8 million in stockholders' equity. GCCB serves the Pensacola, Florida metropolitan statistical area through five

locations in Gulf Breeze, Pace and Pensacola, Florida....

The merger agreement has been approved by the Board of Directors of each company. Closing of the transaction, which is expected to occur late in the fourth quarter of 2016 or early in the first quarter of 2017, is subject to customary conditions, including regulatory approval and approval by the shareholders of GCCB.

First Bancshares currently estimates annual pre-tax expense reductions associated with the transaction will be approximately 46% of GCCB's annual non-interest expenses. Assuming the transaction is completed in the first quarter of 2017, the expense savings are estimated to be fully achieved by the end of 2017. The transaction is expected to be accretive in 2018, the first full year of combined operations. Estimated acquisition and conversion related costs are approximately $3.3 million on a pre-tax basis.

The transaction is expected to have an earnback period of less than 3 years from the completion of the transaction. The internal rate of return for the transaction is projected to be greater than 25% which is well above First Bancshares' estimated cost of capital.

42.     Performance Trust Capital Partners, with Jonathan W. Briggs as lead investment banker, acted as financial advisor to First Bancshares, and Jones Walker LLP, with lead attorney Neal Wise, acted as its legal advisor.

43.     Monroe Financial Partners, Inc., with Paula S. Johannsen as lead investment banker, acted as financial advisor to Gulf Coast Community Bank, and Smith MacKinnon, PA, with lead attorney John P. Greeley, acted as its legal advisor.

44.     The Company's shareholders are now being asked to approve Iberville Transaction by approving the issuance of 3,563,380 shares of common stock upon the conversion of an equivalent number of Series E Preferred Stock, as contemplated by the SPAs, at a special meeting of shareholders on December 7, 2016.

45.     Under Mississippi law, the Company's shareholders do not have dissenters' or appraisal rights.

46.    Prior to the announcement of the Private Placement and Iberville Transaction, the Company's stock traded higher than the $17.75 per share that Company insiders are paying for preferred shares under the SPAs.

47.    On October 13, 2016, First Bancshares closed at $17.82 per share, and since the entry of the SPAs and Iberville Transaction announcement, the Company's stock has closed above $21.50 per share every day.

48.    In fact, the Company's stock closed as high as $19.32 per share as recently as September 29, 2016.

## THE PROXY FAILS TO DISCLOSE AND/OR MISREPRESENTS MATERIAL INFORMATION

49.    On October 14, 2016, First Bancshares filed the Proxy with the SEC in connection with the Private Placement, Iberville Transaction and Gulf Coast Transaction. The Proxy solicits the Company's stockholders to vote in favor of the issuance of 3,563,380 shares of common stock upon the conversion of an equivalent number of Series E Preferred Stock, as contemplated by the SPAs.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  The Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the approving the issuance of common stock as part of the Private Placement and subsequent Iberville and Gulf Coast Transactions, in violation of Sections 14(a) and 20(a) of the Exchange Act.

50.    In particular, the Proxy misrepresents material information and/or fails to disclose, among other things:

a. The amount by which the Company's common stock will be diluted on a per share basis if the proposal to issue 3,563,380 shares of common stock is approved;

b. Whether the Company and/or First Bancshares' management explored alternative transactions to raise capital as opposed to the Private Placement and, if so, the costs of such alternative transactions;

c. If the Company did explore alternative financing opportunities, whether such opportunities were debt or equity transactions, or a combination of both;

d. How the Company plans to use the remaining proceeds from the Private Placement after the Iberville Transaction; and

e. What the Company's internal rate of return ("IRR") is.

51.     It is well-settled that management's financial projections are the lifeblood of the Company and are crucial to providing stockholders with management's inside view of the Company's value and future prospects. Stockholders are entitled to know about the Company's promising future financial prospects before approving the common stock to be issued in the Private Placement for the Iberville and Gulf Coast Transactions. This expected performance is more reliable than similar forecasts prepared by third-party analysts and other non-insiders as it comes from members of corporate management who have their fingers on the pulse of the company. This is particularly true when the Company's insiders are receiving a substantial discount when purchasing shares of the Company, as opposed to the rest of the investing public who have to pay a premium for the Company's shares now. Moreover, such forecasts are material to Plaintiff and other reasonable investors because the Company's financial advisors to the Iberville and Gulf Coast Transactions reviewed and relied upon the omitted projections in preparing their fairness opinions for those transactions. This data is necessary for making an informed decision about whether to support the vote for approving the common shares for the Private Placement as those funds will then be used in the Iberville Transaction.

52.     The Proxy states that the Company entered into the SPAs "with a limited number of institutional and other accredited investors." Proxy, at 4.  The Proxy fails to disclose:

     a.  The identities of these institutional and other accredited investors;

     b.  The amount of shares each investor purchased pursuant to the SPAs; and

     c.  Whether any of the purchasers of Company's stock pursuant the SPAs has any affiliations or is a related-party.

53.     Further, the Proxy fails to disclose whether any of the parties to the Iberville Transaction and/or the Gulf Coast Transaction are related parties or have affiliations with any party to the Private Placement or First Bancshares.

54.     The omission of the above information renders statements in the Proxy materially incomplete and/or materially misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the vote at the special stockholder meeting on December 7, 2016, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the issuance of 3,563,380 shares of common stock in connection with the Private Placement, Iberville and Gulf Coast Transactions, and they are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### (Against First Bancshares and the Individual Defendants for Violations of Section 14(a) of the Exchange Act and Regulation G and Rule 14a-9 Promulgated Thereunder)

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Private Placement, Iberville Transaction and Gulf Coast Transaction.  Each of the

Defendants reviewed and authorized the dissemination of the Proxy, which fails to disclose critical information regarding, among other things:

    a. The amount by which the Company's common stock will be diluted on a per share basis if the proposal to issue 3,563,380 shares of common stock is approved;

    b. Whether the Company and/or First Bancshares' management explored alternative transactions to raise capital as opposed to the Private Placement and, if so, the costs of such alternative transactions;

    c. If the Company did explore alternative financing opportunities, whether such opportunities were debt or equity transactions, or a combination of both;

    d. How the Company plans to use the rest of the proceeds from the Private Placement after the Iberville Transaction;

    e. What the Company's internal rate of return ("IRR") is;

    f. The identities of the institutional and accredited investors to the SPAs;

    g. Whether any of the parties to the SPAs have any affiliations or are related parties with each other, the Company or any defendant;

    h. The Company's financial projections;

    i. Information relating to the financial analyses performed by (i) Keefe, Bruyette & Woods, Inc. and (ii) Sheshunoff & Co., in connection with the SPA and the Iberville Transaction;

    j. Information relating to the financial analyses performed by (i) Performance Trust Capital Partners and (ii) Monroe Financial Partners, Inc., in connection with the Gulf Coast Community Bank Transaction; and

    k. Information relating to the financial analyses performed by FIG Partners, LLC, (ii) Stephens Inc., and (iii) Keefe, Bruyette & Woods, Inc., in connection with the Private Placement of preferred stock.

    57. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of First Bancshares, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

58.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

59.    SEC Regulation G has two requirements: (1) a general disclosure requirement and (2) a reconciliation requirement. The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading." SEC Release No. 33-8176. The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. *Id.* Defendants have violated Regulation G by failing to include the financial metrics referenced above in the Proxy, which renders the non-GAAP measures referenced in the Proxy materially misleading.

60.    Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Private Placement, Iberville Transaction and Gulf Coast Transaction. The Individual Defendants knew or should have known that the material

21

information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

61.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Private Placement, Iberville Transaction and/or Gulf Coast Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

### (Against the Director Defendants for Violations of Section 20(a) of the Exchange Act)

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of First Bancshares within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of First Bancshares, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  Projected financial information was reviewed by the Board periodically at meetings.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Private Placement, Iberville Transaction and Gulf Coast Transaction.  They were, thus, directly involved in the making of this document.

66.     In addition, as the Proxy sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Private Placement, Iberville Transaction and Gulf Coast Transaction.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 and Regulation G by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

69.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Private Placement, Iberville Transaction and/or Gulf Coast Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 9, 2016

FOR PLAINTIFF:  Jonathan Raul

BY:

John W. "Don" Barrett
David McMullan

Sterling Starns
DON BARRETT, P.A.
404 Court Square North
P.O. Box 927
Lexington, MS 39095-0927
Tel:  662-834-2488
Dbarrett@barrettlawgroup.com
SstarnS@barrettlawgroup.com
Dmcmullan@barrettlawgroup.com

Richard R. Barrett
Barrett Law Group, P.A.
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Tel: (662)380-5018
rrb@rrblawfirm.net

**OF COUNSEL**

**LIFSHITZ & MILLER**
Joshua M. Lifshitz
Edward W. Miller
821 Franklin Avenue, Suite 209
Garden City, NY 11530
Tel: (516) 493-9780